CLERK'S OFFICE
A TRUE COPY
May 17, 2021
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE CONCERNING THE LOCATION DESCRIBED IN ATTACHMENT A

Case No. 21-M-397 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 26 U.S.C. § 5861 | Unlawful manufacturing and possession of an unregistered destructive device |

The application is based on these facts:

See attached affidavit

❒ Continued on the attached sheet.

❒ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ______ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Rick Hankins

Digitally signed by RICKY HANKINS
DN: c=US, o=U.S. Government, ou=Dept of Justice, ou=ATF, cn=RICKY HANKINS, 0.9.2342.19200300.100.1.1=15001001699456
Date: 2021.05.17 09:25:09 -05'00'

*Applicant's signature*

ATF SA Rick Hankins

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone/email *(specify reliable electronic means)*.

Date: 5/17/21

Stephen C. Dries

*Judge's signature*

City and state: Milwaukee, WI.

Honorable Stephen C. Dries

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a warrant to search information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered in Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a warrant under Title 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further described in Attachment B.I. The government will then review that information and seize the information that is further described in Attachment B.II.

2. I am a Special Agent of the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with the ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

4. In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin

and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have participated in over 275 fire scene examinations and have testified as an expert. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,400 class hours of fire-related training. Furthermore, I have been an instructor regarding fire-related topics on multiple occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 200 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from approximately August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

5. This affidavit is based upon my personal knowledge as well as information provided to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

6. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

7. As a part of my duties with the ATF, I investigate criminal violations relating to arson and arson-related offenses, including violations of Title 18, United States Code, Section 844. During the course of my investigations, I have regularly used data forensically extracted from cellular devices to obtain evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

8. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 26, United States Code, Section 5861 (unlawful manufacturing and possession of an unregistered destructive device) has been committed by an Unknown Suspect. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

9. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." Title 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

10. Based on my training and experience, I know that cellular devices, such as mobile telephones, are widely-used wireless devices that enable their users to send and receive wire and/or electronic communications using the networks provided by cellular service providers. In order to send or receive communications, cellular devices connect to radio antennas that are part of the

cellular network called "cell sites," which can be mounted on towers, buildings, or other infrastructure. Cell sites provide service to specific geographic areas, although the service area of a given cell site will depend on factors including the distance between towers. As a result, information about what cell site a cellular device connected to at a specific time can provide the basis for an inference about the general geographic location of the device at that point.

11. Based on my training and experience, I also know that many cellular devices such as mobile telephones have the capability to connect to wireless Internet ("Wi-Fi") access points if a user enables Wi-Fi connectivity. Wi-Fi access points, such as those created through the use of a router and offered in places such as homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the Wi-Fi network. In general, devices with Wi-Fi capability routinely scan their environment to determine what Wi-Fi access points are within range and will display the names of networks within range under the device's Wi-Fi settings.

12. Based on my training and experience, I also know that many cellular devices feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a mobile device and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a mobile device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by mobile devices within the Bluetooth device's transmission range, to which it might connect.

13. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this

technology, the phone can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the app's operation.

14. Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

15. In addition, based on my training and experience, I know that Google is offers numerous online-based services, including email (Gmail), navigation (Google Maps), search engine (Google), online file storage (including Google Drive, Google Photos, and YouTube), messaging (Google Hangouts and Google Allo), and video calling (Google Duo). Some services, such as Gmail, online file storage, and messaging, require the user to sign in to the service using their Google account. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address. Other services, such as Google Maps and YouTube, can be used while signed in to a Google account, although some aspects of these services can be used even without being signed in to a Google account.

16. In addition, based on my training and experience, I know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be synced across the various devices on which they may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices.

17. Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, phones that do not run the Android operating system, such as Apple devices.

18. Based on my training and experience, I know that Google collects and retains location data from devices running the Android operating system when the user has enabled Google location services. Google then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. In addition, I know that Google collects and retains data from non-Android devices that run Google apps if the user has enabled location sharing with Google. Google typically associates the collected location information with the Google account associated with the Android device and/or that is signed in via the relevant Google app. The location information collected by Google is derived from sources including GPS data, information about the cell sites within range of the mobile device, and information about Wi-Fi access points and Bluetooth beacons within range of the mobile device.

19. Based on my training and experience, I also know that Google collects and retains information about the user's location if the user has enabled Google to track web and app activity. According to Google, when this setting is enabled, Google saves information including the user's location and Internet Protocol address at the time they engage in certain Internet- and app- based activity and associates this information with the Google account associated with the Android device and/or that is signed in with the relevant Google app.

20. Location data, such as the location data in the possession of Google, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and

experience that Google has the ability to determine, based on location data collected via the use of Google products as described above, mobile devices that were in a particular geographic area during a particular time frame and to determine which Google accounts those devices are associated with. Among other things, this information can inculpate or exculpate a Google account holder by showing that he was, or was not, near a given location at a time relevant to the criminal investigation.

21. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

22. Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins

to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

**PROBABLE CAUSE**

**Fire at 3773 North 77th Street, Milwaukee, WI**

23. On April 25, 2021, at approximately 4:43AM, the Milwaukee Fire Department responded to residential fire located at 3773 North 77th Street, Milwaukee, Wisconsin. The fire department subsequently extinguished a fire inside the residence's kitchen.

24. With written consent from the homeowner, D.G., investigators from the Milwaukee Fire Department, Wisconsin Department of Justice, and ATF subsequently conducted a fire scene examination at 3773 North 77th Street. During the course of the fire scene examination, Your Affiant located and recovered the following items of evidence:

a. Vegetation located at ground level on the east exterior of 3773 North 77th Street (under the living room window) that emitted an odor consistent with the possible presence of a petroleum distillate.

b. Remnants of a broken glass bottle of Xavier V Extra Smooth V.S.O.P. Brandy located on the east exterior of 3773 North 77th Street (under the living room window and front yard).

c. Remnants of charred cloth material located in the front yard near the original location of the glass bottle neck for the Xavier Brandy bottle.

d. Fire debris from the kitchen floor located in front of the kitchen sink.

e. Remnants of a broken glass bottle of Everfresh Cranberry Apple Juice located on the kitchen floor in multiple areas in the east half of the kitchen.

25. Examination of the east exterior of 3773 North 77th Street exterior showed soot damage immediately under the living room window that was consistent with fire impingement.

The proximity of the broken brandy bottle, charred cloth, and odor of a petroleum distillate is consistent with a Molotov cocktail, an incendiary device, impacting the east exterior of the home under the living room window. An incendiary device is classified as a destructive device under 26 U.S.C. § 5845(f).

26. Investigators also located a hole in the kitchen's west exterior glass window consistent with an object impacting the window from the outside inward. The recovery of broken remnants of the Everfresh Juice bottle inside the kitchen, coupled with the damage to the kitchen window, is consistent with a second incendiary device having been thrown through the kitchen's west exterior window.

27. The fire damage to the east exterior of 3773 North 77th Street and the fire damage inside the kitchen were non-communicated. In other words, there were two separate and unrelated fire origins. As a result, this fire has been classified as incendiary, an intentional act.

28. D.G. was home at the time of the fire and stated he/she woke to the sound of the ADT alarm and subsequently observed a fire on the kitchen floor.

29. D.G. further said the perpetrators were likely people who had a problem with one of her/his adult sons. D.G. stated her/his two adult sons were frequently in trouble with the law, girlfriends, and other rivals.

30. D.G. further said his/her adult son, Dante Goodlow, has children with Tiffany Adaway. D.G. reported that Dante Goodlow and Adaway have a contentious relationship. D.G. stated that Tiffany Adaway tried burning her/his house approximately five years ago, as referenced in Milwaukee Police Department Incident #15-1650040.

31. D.G. also said her/his son Dante Goodlow had admitted that he robbed an unnamed drug dealer approximately one year ago with the help of Tiffany Adaway. According to D.G.,

Dante Goodlow said Tiffany Adaway had informed Dante about the location of a drug dealer who he could rob. D.G. further stated that Dante learned after the robbery that the drug dealer had cameras and was able to identify Dante as the robber. Additionally, D.G. said she/he received a threatening call from a male with a blocked number who stated he was going to kill her/him.

32. D.G. further stated her/his other son, John Goodlow, has a contentious relationship with the mother of his child, Tynonna Johnson. D.G. stated that Johnson showed up on the front stoop of 3773 North 77th Street sometime in mid-February 2021 and pounded on the front door. D.G. said Johnson was upset that John Goodlow was not around and no one was helping her with her child. D.G. said she/he refused to let Johnson inside the house and Johnson started calling her/him names. D.G. stated she/he called the police and Johnson left the house while D.G. was on the phone with the police department.

33. D.G. reported that Tyonna Johnson called her/him from phone number (414) 335-4291 on May 12, 2021.

**Surveillance Video**

34. Investigators recovered surveillance video from the Shell gas station located at 7609 West Capitol Drive, Milwaukee, Wisconsin, which is located approximately two blocks immediately north of 3773 North 77th Street. Your Affiant compared the current time on his government issued iPhone to that of the current time on the surveillance system and the surveillance system was exactly two hours slower than real time. Additionally, investigators also recovered video from home surveillance systems located on the same block as 3773 North 77th Street. The following is a summary of relevant images captured by various surveillance cameras on April 25, 2021:

35. At approximately 4:32:00AM, camera #1 at the Shell gas station captured images of a minivan turn southbound on 77th Street after it had traveled westbound on Capitol Drive through the 76th Street intersection. The van is depicted in Figure #1.

**Figure 1 - Minivan about to turn south on 77th Street**

36. Surveillance video obtained from 3723 North 77th Street showed a light-colored minivan travel southbound on 77th Street at approximately 4:33:05AM, and the same minivan was captured on video traveling northbound in the alley behind 3723 North 77th Street at approximately 4:33:39AM. An image of the minivan traveling northbound in the alley is depicted in Figure #2, which is the same alley located behind 3773 North 77th Street.



**Figure 2 - Minivan northbound in alley**

37. At approximately 4:41AM, a video camera located at 3717 North 77th Street captured images of a flash of light come from the direction of 3773 North 77th Street.

38. At approximately 4:43:15AM, camera #8 at the Shell gas station captured images of a light-colored minivan travel eastbound on Capitol Drive and continue through the 76th Street intersection. The van is depicted in Figures #3 and #4.



**Figure 3 - Minivan traveling eastbound on Capitol Drive**



**Figure 4**

## CONCLUSION

39. Based on the forgoing, there is probable cause to believe that unknown suspects manufactured and possessed unregistered destructive devices, in violation of 26 U.S.C. § 5861, at or near 3773 North 77th Street, Milwaukee, Wisconsin, on April 25, 2021.

40. I further submit that there is probable cause to search information in the possession of Google relating to what devices were in the Target Location described in Attachment A during the time period described in Attachment A, as well as information that identifies the Google accounts with which those devices are associated, for evidence of the crimes at issue in this case. Among other things, this information can inculpate or exculpate a Google account holder by

showing that he was, or was not, near a given location at a time relevant to the criminal investigation. The Target Locations and times correspond to the fires described above.

41. In order to facilitate the manageable disclosure of and search of this information, the proposed warrant contemplates that Google will disclose the information to the government in stages rather than disclose all of the information for which the government has established probable cause to search at once. Specifically, as described in Attachment B.I:

   a. Google will be required to disclose to the government an anonymized list of devices that specifies information including the corresponding unique device ID, timestamp, coordinates, and data source, if available, of the devices that reported their location within the Target Locations described in Attachment A during the time period described in Attachment A.

   b. The government will then review this list in order to identify device IDs that became present at the Target Location during the Target Time Period. The "Target Time Period" is defined as a known time period that suspect(s) were in a Target Location based on available video evidence. The government will compare the device IDs reported at the Target Location during the Target Time Period to device IDs reported at the same Target Location before and after the Target Time Period. Those device IDs that appear at the Target Location either before or after the Target Time Period will not be subject to further inquiry. By contrast, device IDs that appear at the Target Location only during the Target Time Period, and not before or after, will be considered potential suspect device IDs.

c. Google will then be required to disclose to the government the information identifying the Google account(s) for those devices about which the government further inquiries.

42. I therefore request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

43. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**REQUEST FOR SEALING**

44. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

## ATTACHMENT A

**Property To Be Searched**

This warrant is directed to Google LLC and applies to:

(1) Location History data, sourced from information including GPS data and information about visible wi-fi points and Bluetooth beacons transmitted from devices to Google, reflecting devices that Google calculated were or could have been (as indicated by margin of error, *i.e.,* "maps display radius") located within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive Location History data.

LOCATION - Initial Search Parameters

- Date: April 25, 2021
- Time Period: 4:18AM to 4:53AM (CST)
- Target Location: Geographical area identified as:
  (1) 43.086522, -88.009836; (2) 43.086497, -88.008547; (3) 43.085786, -88.008536; (4) 43.085781, -88.009814

  Also approximately depicted using the following image:

Google is further ordered to disclose the above information to the Government within 10 days of the issuance of this warrant.

# ATTACHMENT B

## Particular Items to Be Seized

### I. Information to be disclosed by Google

The information described in Attachment A, via the following process:

1. Google shall query location history data based on the Initial Search Parameters specified in Attachment A. For each location point recorded within the Initial Search Parameters, and for each location point recorded outside the Initial Search Parameters where the margin of error (*i.e.*, "maps display radius") would permit the device to be located within the Initial Search Parameters, Google shall produce to the government information specifying the corresponding unique device ID, timestamp, location coordinates, display radius, and data source, if available (the "Device List").

2. The government shall review the Device List and identify to Google the devices about which it seeks to obtain Google account identifier and basic subscriber information. Specifically, the government will review this list in order to identify device IDs that became present at the specific Target Location during the Target Time Period. A "Target Time Period" is defined as a known time period that suspects were in a Target Location based on available video evidence. The government will compare the device IDs reported at the Target Location during the Target Time Period to device IDs reported at the same Target Location before and after the Target Time Period. Those device IDs that appear at the Target Location either before or after the Target Time Period will not be subject to further inquiry. By contrast, device IDs that appear at the Target Location only during the Target Time Period, and not before or after, will be considered potential suspect device IDs.

3. Google shall disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Accounts associated with each device ID appearing on the Device List about which the government inquires.

## II. Information to Be Seized

All information described above in Section I that constitutes evidence of violations of Title 26, United States Code, Section 5861 (unlawful manufacturing and possession of an unregistered destructive device), involving unknown persons.